UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBERT R. CRIPE, JR.,                    )
                                          )
            Plaintiff,                    )
                                          )       Civil Action No. 03-2206 (RWR)
       v.                                 )
                                          )
NORMAN Y. MINETA, Secretary               )
U.S. Department of Transportation,        )
                                          )
            Defendant.                    )
_____  )

MEMORANDUM

       In this case, defendant finds itself in the curious position of initially granting

plaintiff's request for a reasonable accommodation due to his HIV-positive status, and

now moving for summary judgment on the ground that there is no evidence that plaintiff

was entitled to a reasonable accommodation.[1]  This argument is untenable and erroneous.

There is also sufficient evidence that defendant failed to keep plaintiff's medical records

in confidence within the meaning of the Rehabilitation Act of 1973.  Accordingly,

defendant's pending Motion for Summary Judgment is denied.

       Plaintiff's complaint initially contained four claims for relief.  In his opposition

brief, plaintiff consented to the dismissal of two of his claims for gender discrimination

and violations of the Privacy Act.  See Pltfs' Opp. to Def's Mot. for SJ ("Opp."), at 1 n.1.

Left remaining for consideration are the following two claims, both based on violations of

_____

       [1]This motion has been referred to the undersigned by consent.  See May 18, 2006 Order.

the Rehabilitation Act of 1973 (29 U.S.C. § 701, et seq.): (1) discrimination based on disability, and (2) improper disclosure of confidential medical information.

I.      Facts

Construing the evidence in a light most favorable to plaintiffs, the record reveals the following facts.

Plaintiff Robert Cripe has worked for the Federal Aviation Administration ("FAA") for 17 years.  For the past 10 years, he has served as the Administrative Officer for the Office of Government and Industry Affairs.  Quentin Burgess, as the Manager of the Government and Industry Affairs office, has been plaintiff's supervisor since 1992 or 1993.  See Opp. at 2 and citations therein.  Plaintiff currently lives in Virginia Beach, Virginia.

A.      Reasonable Accommodation

In 1990, plaintiff was diagnosed with Generalized Anxiety Disorder; in 1994, he was diagnosed with HIV.  Plaintiff told Burgess that he was HIV positive in either 1997 or 1998.  In 1999, plaintiff was absent from work frequently because of complications from his HIV.  See Pltf's Stmnt of Material Facts in Dispute ("Pltf's Stmnt") ¶ 2.  In August 1999, plaintiff began to telecommute one day per week.  In 2000 and 2001, he telecommunted two days per week.  During this period, when another supervisor asked Burgess about plaintiff's absences, Burgess explained that they were due to his health problems.  See id.

2

On November 25, 2002, David Balloff, the newly appointed Assistant Administrator of the Government and Industry Affairs office, announced that, effective January 6, 2003, staff would no longer be able to telecommute.  The next day, Burgess provided plaintiff with a memo which officially terminated his telecommuting agreement. On November 7 and December 2, 2002, plaintiff asked Burgess for permission to telecommute two days a week as a reasonable accommodation of his disability.  Burgess did not respond to his latter request.  See id. ¶ 8.  On January 10, 2003, plaintiff submitted to Balloff a written request for reasonable accommodation due to his "existing medical condition."  Id. ¶ 15.

Before filing his formal request for accommodation, plaintiff had previously submitted two letters from his physicians briefly explaining his condition.  See Opp. Exs. 2; 5.  On January 21, 2003, to support his specific request for accommodation, plaintiff submitted two additional letters – one from Dr. Chaintella (his primary care physician) and another from Dr. Soni (his infectious disease physician).  Pltf's Stmnt ¶ 18.  Dr. Chiantella's letter states in part:

> I am requesting that strong consideration be made for allowing Mr. Cripe to telecommute from home at least 2 days per week.  The medical indication for that would be his various symptoms of fatigue, digestive upset, depression, and headaches and sleep deprivation which come as a result of his HIV, anxiety and depression and especially related to the multiple medications which he has been prescribed to treat the above mentioned conditions.

See id. ¶ 18.

3

The FAA disagreed.  On January 22, 2003, Dr. Pakull, the FAA's Chief Psychiatrist, wrote in a memorandum that "[w]hile there may be physical medical reasons to support an accommodation, there is no specific psychiatric justification for such an accommodation."  See id. ¶ 21.  On that same day, Dr. Poole, an FAA Senior Medical Officer, wrote as follows:

> I agree with Dr. Pakull's assessment.  The diagnosis does not a priori justify the need for any accommodation.  If the employee claims the illness is severe enough to require accommodation then it is necessary for him to provide a detailed medical report from his treating physician.  The report must include a history of the present illness, comprehensive physical examination and associated laboratory studies including viral loads and C4 cell counts.

See id.  In response, on January 27, 2003, plaintiff signed release forms to authorize Drs. Poole and Pakull to obtain any needed medical information from Drs. Chiantella and Soni.  See id. ¶ 24.  Plaintiff believed that this release was what the FAA was seeking. See id.  In a January 30, 2003 letter, Burgess requested additional information and provided plaintiff with a document that contained the four relevant medical criteria for determining eligibility for a reasonable accommodation: "[1] The name, severity, and the duration or projected duration of the impairment(s); [2] the major life activities (e.g., walking, sleeping) that are substantially limited by the impairment (s); [3] how the impairment(s) impacts the completion of job duties; [4] recommended workplace accommodations."  See id. ¶ 25.  Plaintiff believed, however, that defendant already had this information, in part because of his physicians' January 21, 2003 letters.  Over the

4

next few months, plaintiff pushed his case for a reasonable accommodation, and

defendants continued to insist on additional medical documentation.  See id. ¶¶ 26-54.

On June 18, 2003, the FAA approved plaintiff's request for a reasonable

accommodation, and plaintiff resumed telecommuting on Mondays and Fridays five days

later.  See Pltf's Stmnt ¶ 55.  In total, plaintiff was not allowed to telecommute from

January 6, 2003 to June 20, 2003.  See Pltf's Stmnt ¶ 57.

### B.    Alleged Disclosure of Medical Records

In addition, the following events took place regarding the alleged unauthorized

disclosure of plaintiff's medical records.  In response to the Agency's continued requests

for additional medical information, on May 23, 2002, plaintiff's counsel sent a letter[2] to

the office of Transportation Secretary Norman Mineta regarding plaintiff's case.  This

letter described plaintiff's health problems and HIV-positive status; it was not marked

confidential.  It was forwarded by leather pouch to the FAA, where it was processed by

Belinda Dyson, in the FAA's Administrator's Office of the Executive Secretary.  See

Pltf's Stmnt ¶ 71-73.  "Due to the sensitive information in the May 23, 2003 letter, Ms.

Dyson consulted her supervisor, who advised her to provide copies of the letter to Mr.

Balloff and to Ms. Rochelle Claypoole, the Special Assistant to the FAA Chief of Staff."

Id. ¶ 74.  The letter was delivered without an envelope, and sat on Claypoole's desk

---

[2]Plaintiff claims that he sent the Secretary two letters; defendant argues that it only received one letter.  Because defendant's mishandling of the May 23, 2002 letter is a fact sufficient to defeat its summary judgment motion, this court need not consider the contents or existence of the second letter.

without a cover sheet.  <u>See</u> Claypoole Dep. Tr. (9/16/04) at 18-20 (Opp. Ex. 29).

Suzanne Holloway, then Administrative Officer for the FAA Office of the Administrator, helped Claypoole with her duties, including the sorting of her mail.  <u>See</u> <u>id.</u> ¶ 78.  Holloway picked up and read plaintiff's letter that was sitting on Claypoole's desk.  Claypoole testified that it was inappropriate for Holloway to read the letter. Holloway, who knew plaintiff for several years, called him and expressed her concern and support regarding his health, although she did not mention plaintiff's specific medical condition.  She did not tell anyone else about the contents of the letter.  <u>See</u> <u>id.</u> ¶ 80-82.

In addition, the letter was also sent to Burgess, plaintiff's supervisor.  Burgess misplaced the letter.  <u>See</u> Claypoole Dep. Tr. at 42.  In addition, plaintiff contends that Balloff did not properly maintain plaintiff's medical information.  Balloff allegedly kept plaintiff's medical documents loose, along with other unrelated documents, in an unlocked drawer.  <u>See</u> Pltf's Stmnt ¶ 83.  Balloff has "no idea" what he did with plaintiff's June 9, 2003 request for reasonable accommodation and supporting documentation.  <u>See</u> Balloff Dep. Tr. (8/4/04/) at 87-88 (Opp. Ex. 23).

## II.    Defendant's Motion to Dismiss

### A.    Disability Discrimination

Federal law prohibits discrimination against persons with a disability.  <u>See</u> 29 U.S.C. § 794.  "Discrimination" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability

. . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112. According to defendant, "[i]t is not disputed that Plaintiff is able to perform his essential duties when telecommuting." Def's Mot. for SJ ("Mot.") at 30. With this concession, the only issue is whether (1) plaintiff is "disabled"; and (2) defendant made reasonable accommodations.[3]

    1.    <u>Plaintiff's Disability</u>

"Disability" means "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12101. Despite the record evidence that plaintiff is substantially limited in his life activities, defendant nevertheless argues that there is no issue of material fact on this question. This is arguably disingenuous, because defendant already granted plaintiff's telecommuting request on reasonable accommodation grounds. <u>See</u> <u>supra</u> Part I.A. Indeed, the FAA reached this decision after a formal process involving several months of requests for medical information from plaintiff, and after providing plaintiff with the precise criteria that defendant would consider in determining whether to grant plaintiff's request. Although the FAA's decision is not binding on this court (<u>see</u> Mot. at 23 n.12), it nevertheless strongly suggests a question of fact on this issue. In addition, even if the

---

[3]Because defendant's summary judgment motion on the discrimination claim is denied based on defendant's alleged failure to reasonably accommodate, this court does not address plaintiff's separate contention that defendant discriminated when it denied plaintiff a "superior contribution" salary increase.

Agency decided at this point to rescind his reasonable accommodation, a question of

material fact would remain.

Moreover, the record provides at least some evidence that plaintiff suffered from a

disability.  See supra Part I.A.  For example, in response to defendant's requests for more

information and identification of four factors that it considers for reasonable

accommodation requests, on June 6, 2003 Dr. Soni (plaintiff's infectious diseases

physician) wrote the following:

1.   The severity of Mr. Cripe's HIV+ drug resistant [sic] is extreme.  He was
     diagnosed with HIV in 1994, and his health has fluctuated throughout that
     time.  HIV is a fatal disease that impacts the immune system.  There is no
     cure.  The only way to manage HIV is through medication and health
     maintenance.

2.   Mr. Cripe's HIV and the stress it causes in his life affects the major life
     activities of sleeping, reproduction, sexual functions, eating[,] and
     controlling his bowels.  Given the fear of transmission, Mr. Cripe is
     substantially limited in his ability to function sexually.  Mr. Cripe's stress
     over his disease prevents him from sleeping or from sleeping for extended
     periods of time.  It interferes with his sleep patterns and causes fatigue.  The
     fatigue can be debilitating.  Mr. Cripe's HIV has also led to depression,
     which is common in patients facing a life threatening illness.

3.   As I explained in my February 27, 2003 letter, it is important for Mr. Cripe
     to keep his stress at a reasonable level so that he remains healthy.  Stress
     can have a very negative impact on HIV+ people and their immune systems.
     The stress of dealing with his HIV disease plus the stressful demands of his
     job could be better controlled by allowing Mr. Cripe to telecommute two
     days per week.  This would allow him to perform the essential functions of
     his job in a stress reduced environment, benefiting his health and probably
     his productivity.

4.   Other than medication, an HIV+ individual can use diet, nutrition, exercise,
     stress reduction, and other methods to control stress to take positive steps to

> protect their immune systems.  It is imperative that Mr. Cripe do whatever
> he can to protect his health.

See Pltf's Stmnt ¶ 51.  Hence, there is at least a question of material fact on this issue.

### 2.      Accommodations by Defendant

Plaintiff alleges that the 24-week time period[4] during which he was not allowed to

telecommute was not a "reasonable accommodation" as required under federal law.  The

Equal Employment Opportunity Commission ("EEOC") has published an "Enforcement

Guide[]"[5] which has been relied on by the courts in employment disputes, including

reasonable accommodation claims.  See, e.g., Swanks v. WMATA, 116 F.3d 582, 586

(D.C. Cir. 1997).  The Enforcement Guide provides that the employer and employee are

to engage in an "interactive discussion" regarding how the employer can reasonably

accommodate the employee's disability.  See Enforcement Guide n. 19.  Plaintiff argues

that defendant failed to do so.  Defendant counters that plaintiff did not provide sufficient

medical information to justify the accommodation.  See id.

This case necessarily turns on the fact-based question of whether defendant

reasonably accommodated plaintiff, or alternatively whether plaintiff failed to timely

---

[4]Plaintiff argues that defendant's failure to accommodate him began in October 2002, not January 2003.  Although he was still telecommuting then, it was under the defendant's telecommuting policy – and not as an accommodation.  In any event, because there is a question of fact as to the timeliness of defendant's response, this court need not determine today the precise time at which the defendant allegedly failed to accommodate plaintiff.

[5]See EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act, No. 915.002 (Oct. 17, 2002), available at http://www.eeoc.gov/policy/docs/accommodation.html.

provide adequate medical information.  See Armstrong v. Reno, 172 F. Supp. 2d 11, 23

(D.D.C. 2001) ("whether plaintiff was reasonably accommodated at all is also a matter for

a trier of fact to determine.").  It is impossible to determine at this stage who is correct.

Accordingly, defendant's summary judgment motion on plaintiff's discrimination claim

must be denied.

### B.      Unauthorized Disclosure of Medical Records

Plaintiff also alleges that defendant disclosed his confidential medical records and

handled them in a careless manner in violation of the Rehabilitation Act of 1973.  See 29

U.S.C. § 701 et seq.  The disclosure allegedly occurred after plaintiff, in response to

defendant's demand for additional medical information regarding plaintiff's

accommodation request, sent a letter to Transportation Secretary Mineta detailing his HIV

status and health problems.

The Rehabilitation Act (as amended) incorporates the confidentiality provisions of

the Americans with Disabilities Act ("ADA").  See 29 U.S.C. §§ 791(g); 794(d).  The

ADA allows certain employers to make "inquiries into the ability of an employee to

perform job-related functions."  42 U.S.C. § 12112(d)(4)(B).  The D.C. Circuit has held

that the "inquiries" provision includes information the employee provides to the employer

at the employer's request.  See Doe v. U.S. Postal Serv., 317 F.3d 339, 344 (D.C. Cir.

2003).  In Doe, the appellate court considered whether information provided to justify an

employee's long absence due to illness was voluntary and consequently not confidential.

The court concluded that it was not voluntary and was confidential: "The Postal Service conditioned Doe's receipt of [Family Medical Leave Act] leave on his submission of supporting medical documentation, as the FMLA authorized it to do.  It was thus the Postal Service . . ., not Doe, that initiated the inquiry into his medical condition by asking for this medical certification."  Id.  Defendant argues for the first time in its reply brief that the information in the letter was not a medical record.  This court will not consider arguments made for the first time in a reply brief.  Moreover, Doe strongly suggests that the letter was a medical record, because it was submitted in response to an agency's request for additional information.

Because defendant made an "inquiry" into plaintiff's health, under federal law the "information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record . . ."  42 U.S.C. § 12112(d)(3)(B).  Plaintiff contends that defendant violated this provision when it delivered the letter to Rochelle Claypoole's office without an envelope, where it sat on her desk without a cover sheet.  In addition, both Burgess and Balloff misplaced plaintiff's letter.  Balloff also failed to keep plaintiff's medical documents segregated from other documents, and he kept them in an unlocked drawer.

Plaintiff contends that, as a consequence of the manner in which defendant handled his records, others in the office knew about his condition before he wanted

11

people to know.  For example, one of plaintiff's coworkers, Rochelle Claypoole, testified in deposition that she learned plaintiff was HIV positive based on "hearsay" that she possibly heard in the elevator.  See Claypoole Dep. Tr. at 16.  Plaintiff never told her he is HIV positive.  See id.  She also did not learn about his HIV status from "skim[ming]" his letter to Secretary Mineta.  See id.  This leaves the inference that others in the office told her, despite the fact that plaintiff's only revelation of his HIV status was in his letter to Secretary Mineta and when he told Burgress in 1997 or 1998.  As a result of this alleged disclosure, plaintiff claims he suffered from increased psychological stress and stress on his relationship, his health worsened, and he began smoking again.  See Cripe Dep. Tr. (9/8/04) at 22-23 (Mot. Ex. 23).

Defendant counters that plaintiff revealed in an office-wide email seeking medical leave donations that he was very sick.  On June 11, 2003, plaintiff sent an email to the Agency seeking medical leave donations "due to recurring health problems associated with an acute, long-term chronic malady."  See Mot. Ex. 32.  This email did not mention he was HIV positive, however, and in any event plaintiff testified that coworkers' comments regarding his health came before he sent this email.  See Cripe Dep. Tr. at 22. Defendant also argues that plaintiff failed to mark the letter "Confidential" or otherwise indicate that it contained confidential medical information.  However, defendant clearly understood that the letter contained sensitive medical information.  See Pltf's Stmnt ¶ 74.

This case is similar to Doe v. U.S. Postal Serv., supra.  There the D.C. Circuit

reversed the district court's decision to grant defendant summary judgment when plaintiff argued that one of his supervisors must have revealed his HIV status.  Plaintiff had submitted a Family Medical Leave Act form to justify his long absences; on the form he revealed his HIV status.  He had not told anyone else at work that he was HIV positive. "When Doe returned to work, he discovered that his HIV status had become common knowledge among his co-workers, many of whom commented to him about it.  Several identified Doe's management-level supervisor, Melvin Tahir, as the source of the information."  Doe, 317 F.3d at 341.  Tahir denied telling anyone about his condition, and another supervisor testified that he put Doe's form in a locked cabinet and never shared the information.  Nevertheless, the court of appeals held that there was at least a question of material fact regarding how Doe's coworkers learned that he was HIV positive: Doe did not otherwise reveal his HIV status, and his coworkers only began to comment on his status after Doe submitted the FMLA form.  See id. at 342-43; see also id. at 343 ("because plaintiffs can rarely produce direct evidence that the government has disclosed confidential information obtained from their private records, requiring such evidence would eviscerate the protections of the Privacy Act.") (citation omitted).  Consistent with Doe, there is at least a question of material fact as to whether defendant appropriately maintained plaintiff's confidential medical records.

III.   **Conclusion**

For the foregoing reasons, an Order to be filed denies defendant's motion for summary judgment.


/s/

Louis F. Oberdorfer
UNITED STATES DISTRICT JUDGE

Dated: June 29, 2006